**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
SHIVA STEIN,                                      :
                                                  :
              Plaintiff,                          :   Civil Action No. _____
                                                  :
v.                                                :
                                                  :   COMPLAINT FOR VIOLATIONS OF
MTS SYSTEMS CORPORATION, DAVID J.                 :   SECTIONS 14(a) AND 20(a) OF THE
ANDERSON, RANDY J. MARTINEZ,                      :   SECURITIES EXCHANGE ACT OF
NANCY ALTOBELLO, DAVID D.                         :   1934
JOHNSON, MICHAEL V. SCHROCK,                      :
CHUN HUNG YU, and LINDA                           :   JURY TRIAL DEMANDED
ZUKAUCKAS,                                        :
                                                  :
              Defendants.                         :
--------------------------------------------------------
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against MTS Systems Corporation ("MTS Systems or the "Company") and the members MTS Systems board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of MTS Systems by Amphenol Corporation ("Amphenol") and its affiliates.

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 8, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Moon Merger Sub Corporation ("Merger Sub"), a wholly owned subsidiary of Amphenol, will merge with and into MTS Systems with MTS Systems surviving the merger and becoming a wholly owned subsidiary of Amphenol (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each MTS Systems common share issued and outstanding will be converted into the right to receive $58.50 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked MTS Systems stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore Group L.L.C. ("Evercore") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MTS Systems stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of MTS Systems common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant David J. Anderson has served as a member of the Board since January 2009 and is the Chairman of the Board.

11.     Individual Defendant Randy J. Martinez has served as a member of the Board since March 29014 and has been the Company's Interim President and Chief Executive Officer since May 2020.

12.     Individual Defendant Nancy Altobello has served as a member of the Board since April 2019.

13.     Individual Defendant David D. Johnson has served as a member of the Board since January 2013.

14.     Individual Defendant Michael V. Schrock has served as a member of the Board since March 2014.

15.     Individual Defendant Chun Hung Yu has served as a member of the Board since January 2013.

16.     Individual Defendant Linda Zukauckas has served as a member of the Board since April 2019.

17.     Defendant MTS Systems is incorporated in Minnesota and maintains its principal offices at 14000 Technology Drive, Eden Prairie, Minnesota 55344.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "MTSC."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.     **The Proposed Transaction**

20.     MTS Systems supplies test systems, motion simulators, and precision sensors in the Americas, Europe, and Asia. The Company's Test & Simulation segment offers road simulators and component test systems, vehicle performance test systems, vehicle dynamics simulators, electrical motors and energy recovery systems, tire performance and rolling resistance measurement systems, and moving ground-plane systems and balances. It also provides systems for the physical characterization of material properties; systems to test durability and performance of implants, prostheses, and other medical and dental materials and devices; products, systems,

and software to perform static and fatigue testing of aircraft; products for blades, bearings, and wind turbines; structural engineering systems, such as static and dynamic testing; and seismic simulation tables. In addition, this segment offers installation, product life cycle management, professional training, calibration and metrology, technical consulting, and onsite and factory repair and maintenance services, as well as accessories and spare parts. It serves automobile, truck, motorcycle, motorsports vehicles, construction and agricultural equipment, rail and off-road vehicle manufacturers, and their suppliers, as well as the power generation, aerospace, vehicles, biomedical, structural engineering, oil and gas, wind energy, amusement parks, flight simulation, and other industries. The Company's Sensors segment provides sensors for measurements of vibration, pressure, position, force, and sound; and piezoelectric sensors and components. It serves the automotive, aerospace, industrial, defense, and research and development markets. The Company sells its products through direct sales and service organizations, and independent representatives and distributors, as well as through catalogs, internet, etc. MTS Systems was founded in 1966 and is headquartered in Eden Prairie, Minnesota.

21.    On December 9, 2020, MTS Systems announced that they had entered into a proposed transaction:

> WALLINGFORD, Conn. & EDEN PRAIRIE, Minn.--(BUSINESS WIRE)--Dec. 9, 2020-- Amphenol Corporation (NYSE: APH) ("Amphenol"), a leading global provider of high-technology interconnect, antenna and sensor solutions, and MTS Systems Corporation (Nasdaq: MTSC) ("MTS"), a leading global supplier of advanced test systems, motion simulators and precision sensors, today announced that they have entered into a definitive agreement under which Amphenol will acquire MTS for $58.50 per share in cash, or approximately $1.7 billion, including the assumption of outstanding debt and liabilities, net of cash.
>
> "We have long admired MTS's technology and position across a variety of attractive end markets," said R. Adam Norwitt, Amphenol's President and CEO. "This acquisition is consistent with our strategy of continuing to expand our range of sensor and sensor-based products across a wide array of industries to further

capitalize on the long-term growth potential of the electronics revolution. We are extremely excited about the strength of our combined product portfolio which will enable us to offer even more innovative technologies to our customers around the world. I look forward to welcoming the talented MTS team to the Amphenol family."

"Amphenol is a leader in interconnect and sensor technologies with a proven management team and a strong track record of successfully acquiring companies across its platform," said Randy J. Martinez, MTS's Interim President and CEO. "MTS brings to Amphenol its high-quality technology solutions, a diversified customer base of blue-chip companies and a strong financial profile. We could not be more pleased to join forces with Amphenol, which will allow us to continue to deliver exceptional customer experience through high-quality and innovative solutions."

David J. Anderson, Chairman of MTS's Board of Directors, concluded, "The MTS Board of Directors is pleased, as a result of its strategic review, to deliver MTS Systems shareholders the value inherent in this transaction. I have full confidence that, together with Amphenol, MTS will continue to engineer technologies that meaningfully improve and modernize the world's products – for the benefit of its customers – for generations to come."

MTS is organized into two business segments: Sensors and Test & Simulation. The Sensors segment represents a highly complementary offering of high-technology, harsh environment sensors sold into diverse end markets and applications, and positions Amphenol to have one of the industry's broadest ranges of sensors and sensor-based products. The Test & Simulation segment is an industry leader and Amphenol believes it represents an attractive business with excellent near and long-term potential. Accordingly, Amphenol plans to undertake a strategic review of the business to best position it for future success.

The acquisition of MTS is expected to be accretive to Amphenol's earnings per share in the first year after closing, with approximately $0.10 and $0.06 attributable to MTS's Sensors and Test & Simulation segments, respectively. This assumes the post-closing reduction of certain public company costs. The transaction will be financed through a combination of borrowings under Amphenol's existing credit and commercial paper facilities as well as cash on hand.

The transaction has been unanimously approved by the boards of both companies and is expected to close by the middle of 2021, subject to certain regulatory approvals, approval from MTS's shareholders and other customary closing conditions.

**<u>Advisors</u>**

Centerview Partners LLC is serving as Amphenol's financial advisor for the transaction and Latham & Watkins, LLP is acting as its legal advisor. J.P. Morgan Securities LLC and Evercore are serving as MTS's co-financial advisors and Sidley Austin LLP is acting as its legal advisor.

\* \* \*

22.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that MTS Systems' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

23.     On January 8, 2021, MTS Systems filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning MTS Systems Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by MTS Systems management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial

forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that MTS Systems management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT, Adjusted EBITDA, Adjusted EBITDA (excluding SBC) and Net Operating Profit After Taxes ("NOPAT"), but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.　　Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning The Financial Advisors' Analyses_

29.　　With respect to J.P. Morgan's _Discounted Cash Flow Analysis_ for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.5% to 11.0%.

30.　　With respect to Evercore's _Discounted Cash Flow Analysis_ for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.5% to 11.0%; (iv) the Company's estimated net debt as of September 20, 2020; and (v) the Company's number of fully diluted shares of common stock as of September 30, 2020.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to Evercore's *Public Company Trading Analysis*, the Proxy Statement fails to disclose the multiples and metrics observed by Evercore for each company selected that provided a basis for Evercore for selecting the reference ranges of multiples it used for the analysis.

32.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the multiples and metrics observed by Evercore for each transaction selected that provided a basis for Evercore for selecting the reference range of multiples it used for the analysis.

33.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums observed by Evercore in the analysis.

34.     With respect to Evercore's *Illustrative Leveraged Buyout Analysis*, the Proxy Statement fails to disclose Evercore's basis for selecting the leveraged multiple, financing terms, exit multiple, fees and target internal rate of return.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by GCA and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of MTS Systems within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of MTS Systems, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of MTS Systems, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of MTS Systems, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 11, 2021                    **WOLF HALDENSTEIN ADLER**
                                           **FREEMAN & HERZ LLP**

                                    By:    /s *Gloria Kui Melwani*
                                           Gloria Kui Melwani (GM5661)
                                           270 Madison Avenue
                                           New York, NY 10016

Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*